UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONSTAR MORTGAGE LLC,

                                        Plaintiff,

                    v.

ESTHER HUNTE,

                                        Defendant.

No. 16-CV-8708 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Stephen John Vargas, Esq.
Gross Polowy LLC
Westbury, NY
*Counsel for Plaintiff*

Esther Hunte
Newburgh, NY
*Pro se Defendant*

KENNETH M. KARAS, United States District Judge:

Nationstar Mortgage LLC ("Plaintiff") brings this Action seeking to foreclose on a

mortgage encumbering 42 Brooker Drive, Newburgh, NY 12550, together with the land,

buildings, and other improvements on it (the "Property").  (*See* Compl. (Dkt. No. 1).)  Before the

Court is Plaintiff's Second Motion for Summary Judgment (the "Motion") against pro se

Defendant Esther Hunte ("Defendant").  (*See* Not. of Mot. (Dkt. Nos. 35–36).)   For the reasons

explained herein, the Motion is partially granted and partially denied.

I.  Background

A.  Factual Background

The following facts are taken from the Parties' statement pursuant to Local Civil Rule 56.1, (*see* Pl.'s Local Rule 56.1 Statement in Supp. of Mot. ("Pl.'s 56.1") (Dkt. No. 37); Def.'s Local Rule 56.1 Statement in Opp'n to Mot. ("Def.'s 56.1") (Dkt. No. 42)), and exhibits, (*see* Decl. of Stephen J. Vargas, Esq. in Supp. of Mot. ("Vargas Decl.") (Dkt. No. 39)), and are recounted in the light most favorable to Defendant, the non-movant, *see Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018).  Plaintiff has sent the required Local Rule 56.2 Notice to Defendant.  (*See* Not. to Pro se Litigant (Dkt. No. 37-1).)[1]

On October 28, 2005, Defendant obtained a home mortgage loan from Lehman Brothers Bank, a Federal Savings Bank ("FSB"), in the original principal amount of $337,840.00, memorialized in a promissory note, dated October 28, 2005, and secured by a mortgage, dated

---

[1] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The nonmoving party must then submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  *Id.* at 56.1(b).  "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule."  *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation and quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same).  "A pro se litigant is not excused from this rule."  *Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (citation and italics omitted).  Here, Plaintiff filed and served its 56.1 Statement, (Pl.'s 56.1), in addition to a statement notifying Defendant of the potential consequences of not responding to the Motion, as required by Local Rule 56.2 for pro se litigants, (Not. to Pro se Litigant).  Defendant submitted a statement in response, (*see* Def.'s 56.1), and included exhibits in her Opposition Memorandum, and the Court will refer to Defendant's submissions as needed.  However, the Court notes that even "a pro se party's bald assertions unsupported by evidence are insufficient to overcome a motion for summary judgment."  *Parker v. Fantasia*, 425 F. Supp. 3d 171, 183–84 (S.D.N.Y. 2019) (citation, alteration, and quotation marks omitted).

October 28, 2005, on the Property.  (*See* Pl.'s 56.1 ¶ 1; Vargas Decl. Ex. B ("Cert. of Merit Docs.") 3 (Dkt. No. 39-2).)[2]  The mortgage was recorded in the Office of the Orange County Clerk on September 6, 2006.  (*See* Cert. of Merit Docs. 13.)  The mortgage was subsequently assigned to Mortgage Electronic Registration Systems, Inc., (*see id*. at 14), followed by Aurora Loan Services, (*see id*. at 40), and, ultimately, on June 21, 2012, to Plaintiff, (*see id*. at 42). Plaintiff avers to have had physical possession of the original promissory note since September 11, 2013.  (*See* Vargas Decl. Ex. F ("Robertson Aff.") ¶ 4 (Dkt. No. 39-6).)  According to Plaintiff, the agreement was modified, effective May 1, 2015, to increase the principal balance to $459,143.70, $124,746.71 of which was deferred and non-interest bearing.  (*See* Cert. of Merit Docs. 43, 45–46.)  However, Defendant claims that the modification agreement was "never signed nor executed by [] Plaintiff."  (Def.'s 56.1 ¶ 5.)  Plaintiff has attached a copy of the modification agreement that was purportedly signed in June 2015 by Plaintiff but contains a notary stamp dated March 31, *2019*.  (*See* Cert. of Merit Docs. 50–54.)  Defendant counters that her copy of the contract is the "original" one and that the page numbers on the signature pages differ in her copy from those in Plaintiff's copy.  (Def.'s 56.1 ¶ 5.)  Both contracts are designated as a "copy," but the Court does observe inconsistent native pagination between the copy submitted by Defendant (with no lender signature) and the copy submitted by Plaintiff (which includes the lender's signature).  (*Compare* Cert. of Merit Docs. 53–54 *with* Def.'s Mem. in Opp'n to Mot. Ex. B ("Def.'s Modification Agreement") 61–62 (Dkt No. 43).)[3]  Plaintiff has not responded to Defendant's assertions regarding the inconsistencies between the two copies of the modification agreement or explained the notary stamp dated March 31, 2019.  Moreover, the

---

[2] The Court uses ECF-stamped page numbers to refer to the collection of documents presented in Exhibit B to the Vargas Declaration.

[3] The Court uses ECF-stamped page numbers to refer to Defendant's Exhibits.

Court observes that the modification agreement itself states that it the loan documents "will not

be modified unless and until (i) [the borrower] receive[s] from the Lender a copy of this

Agreement *signed by the Lender*, and (ii) the Modification Effective Date (as defined in Section

3) has occurred."  (Def.'s Modification Agreement 58; Cert. of Merit Docs. 45 (emphasis

added).)

Nevertheless, Defendant has not made any payments on the note—modified or not—

since March 1, 2016.  (*See* Robertson Aff. ¶ 6.)  On July 7, 2016, a 90-day pre-foreclosure notice

was sent by Plaintiff via regular and certified mail to Defendant at the Property.  (*Id*. ¶ 7.)

Plaintiff also filed the notice electronically with the Superintendent of Financial Service on July

8, 2016, in compliance with New York Real Property Actions and Proceedings Law ("RPAPL")

§ 1306(2).  (*Id*. ¶ 8.)  Similarly, Plaintiff avers that a notice of default was mailed to Defendant at

the Property via first class mail on July 7, 2016.  (*Id*. ¶ 9.)  Plaintiff has attached a certified

mailing receipt for the 90-day foreclosure notice but not for the default notice.  (*See id*. ¶¶ 7, 9.)

Defendant failed to cure the default, and as a result, according to Plaintiff, owes Plaintiff

$542,674.84, accounting for interest through August 14, 2019, at the interest rate of 4.25%,

pursuant to the promissory note.  (*See id*. ¶ 10; *see also* Vargas Decl. Ex. M ("Proposed Order")

3 (Dkt. No. 39-13).)

B.  Procedural History

Plaintiff commenced this Action on November 9, 2016.  (*See* Compl.)  Defendant

Answered on December 30, 2016.  (*See* Answer (Dkt. No. 10).)  Following the First Motion for

Summary Judgment (the "First Motion"), the Court granted summary judgment for Plaintiff,

holding that Plaintiff had demonstrated a prima facie case for foreclosure and that Defendant had

not successfully rebutted it.  (*See generally* 2018 Op. (Dkt. No. 26).)  Defendant appealed.  (*See* Not. of Appeal (Dkt. No. 30).)

On June 21, 2019, the Second Circuit issued an Order vacating and remanding this Court's judgment on procedural grounds, noting that Defendant, who was proceeding pro se, had not been served with the requisite Local Rule 56.2 Notice and had not otherwise demonstrated an understanding of what summary judgment practice entailed.  (*See generally* 2d Cir. Order (Dkt. No. 32).)  The Second Circuit did not rule on the merits of the foreclosure action and noted that Plaintiff "may again seek summary judgment upon remand."  (*See id.* at 5.)

Following a Pre-Motion Letter from Plaintiff, the Court instructed Plaintiff that it may file the instant Motion by November 30, 2019.  (*See* Dkt. No. 34.)  On December 5, 2019, Plaintiff filed its opening papers.  (*See* Not. of Mot.; Vargas Decl.; Pl.'s 56.1; *see also* Pl.'s Mem. in Supp. of Mot. ("Pl.'s Mem.") (Dkt. No. 38).)[4]  Plaintiff also served the requisite Local Rule 56.2 notice upon Defendant, remedying the procedural error that the Second Circuit had noted in its Order.  (*See* Not. to Pro Se Litigant.)  On January 9, 2020, Defendant filed her Opposition.  (*See* Def.'s 56.1; *see also* Def.'s Mem. in Opp'n to Mot. ("Def.'s Mem.") (Dkt. No. 43).)  Plaintiff filed a Reply on January 17, 2020.  (Pl.'s Reply Mem. in Supp. of Mot. ("Pl.'s Reply Mem.") (Dkt. No. 44).)  Defendant submitted an additional "Statement of the Case and Procedural Facts" on January 17, 2020, which the Court construes as a Sur-Reply.  (Def.'s Reply Mem. in Opp'n to Mot. ("Def.'s Reply Mem.") (Dkt. No. 46).)[5]

---

[4] Defendant correctly points out that Plaintiff belatedly filed its Motion and accompanying papers and did not explain the delay.  (*See* Def.'s 56.1 ¶ 6.)  However, as the Motion is now fully submitted, the Court will use its discretion to decide the issues presented.

[5] Although the Court typically does not consider sur-replies without prior leave of the Court to submit one, given Defendant's pro se status, the Court will consider it here.

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same).  "In determining whether summary judgment is appropriate," a court must

"construe the facts in the light most favorable to the non-moving party and . . . resolve all

ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653

F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted); *see also Borough of Upper Saddle River

v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  "It is the

movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800

Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp.

3d 495, 521 (S.D.N.Y. 2015) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it

ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an

essential element of the nonmovant's claim," in which case "the nonmoving party must come

forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to

avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114,

123 (2d Cir. 2013) (alteration and quotation marks omitted).  Further, "[t]o survive a [summary

judgment] motion . . ., [a nonmovant] need[s] to create more than a 'metaphysical' possibility

that his allegations were correct; he need[s] to 'come forward with specific facts showing that

there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012)

(emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc*., 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). However, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted)).  Where the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010); *see also Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017) (noting that "it is not the role of the [c]ourt at summary judgment to resolve [a] factual clash"); *Bale v. Nastasi*, 982 F. Supp. 2d 250, 258–59 (S.D.N.Y. 2013) (stating that "[w]here each side . . . tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations and apportion liability, and not for the court.").  And, even if the non-movant's evidence is "thin, [a non-movant's] own sworn statement is adequate to counter summary judgment." *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003) (holding that "[t]he credibility of [the non-movant's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact." (citation omitted)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham v. Lewinski*, 848 F.2d, 342, 344 (2d Cir. 1988); *accord Mercado v. Div. of N.Y. State Police*, No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments

that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted).  Moreover, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment."  *Vt. Teddy Bear Co.*, 373 F.3d at 244; *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the legal validity of an entry of summary judgment should . . . be[] made in light of the opposing party's pro se status" (italics omitted)).  "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment."  *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (alterations, italics, and quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

     B.  Analysis

     A plaintiff mortgagee in a foreclosure action establishes a prima facie case "by presenting a note, a mortgage, and proof of default . . . ."  *E. Sav. Bank, FSB v. Evancie*, No. 13-CV-878, 2014 WL 1515643, at *4 (E.D.N.Y. Apr. 18, 2014) (citations omitted).  This creates a "presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor."  *See id.* (citations omitted).  "Under New York law, summary judgment in a mortgage foreclosure action is appropriate where the note and mortgage are produced to the Court along with proof that the mortgagor has failed to make payments due under the note."  *U.S. Bank, N.A. v. Squadron VCD, LLC*, No. 10-CV-5484, 2011 WL 4582484, at *4 (S.D.N.Y. Oct. 3, 2011) (citations omitted), *aff'd*, 504 F. App'x 30 (2d Cir. 2012).

As before, the Court concludes that Plaintiff has established a prima facie case of foreclosure.  Plaintiff has produced the note and mortgage.  (*See* Cert. of Merit Docs. 3–42.) Plaintiff has demonstrated the chain of assignments that have led it to have standing in this foreclosure Action.  (*See id*.)  In a mortgage foreclosure action, a plaintiff establishes its standing to sue by demonstrating that, at the time that the action commenced, it is "the holder of the note . . . of the underlying mortgage loan."  *Aurora Loan Servs., LLC v. Taylor*, 34 N.E.3d 363, 366 (N.Y. 2015) (citation and quotation marks omitted).  Although Defendant seeks to argue that the underlying mortgage was improperly assigned and that the "chain of title" was broken, (*see* Def.'s 56.1 ¶ 3; Def.'s Mem. 3; Def.'s Reply Mem. 1–2), this assertion, even if true, does not prevent Plaintiff from foreclosing on Defendant.  "Any disparity between the holder of the note and the mortgagee of record does not stand as a bar to a foreclosure action because the mortgage is not the dispositive document of title as to the mortgage loan; the holder of the note is deemed the owner of the underlying mortgage loan with standing to foreclose," *Aurora Loan Servs.*, 34 N.E.3d at 366 (citation, alteration, and quotation marks omitted); *see also Dyer Trust 2012-1 v. Global World Realty, Inc.*, 33 N.Y.S.3d 414, 416 (App. Div. 2016) ("Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." (citations omitted)).  Plaintiff has demonstrated that it was the subject of a written assignment of the underlying note.  (*See* Cert. of Merit Docs. 42.)  Plaintiff has also established, through sworn affidavit, that it was in physical possession of the note by September 11, 2013, prior to commencing this Action.  (*See* Robertson Aff. ¶ 4.)  An affidavit from a representative of the note holder "is enough under New York law to show delivery of the note."  *OneWest Bank, N.A. v. Melina*, No. 14-CV-5290, 2015 WL 5098635, at *4 (E.D.N.Y.

Aug. 31, 2015) (citation omitted), *aff'd*, 827 F.3d 214 (2d Cir. 2016); *Kondaur Cap. Corp. v. McCary*, 981 N.Y.S.2d 547, 548 (App. Div. 2014) ("The plaintiff also established that it had standing as the holder of the note and mortgage by submitting the written mortgage assignments and the affidavit of the plaintiff's president, which established that it had physical possession of the note prior to commencement of this action." (citations omitted)).  Defendant's unsupported speculation as to whether Plaintiff actually possesses the note is insufficient to rebut the record evidence put forth by Plaintiff; in any event, even if physical possession of the note were not proved by the Robertson Affidavit, the attached "written assignment[s] of the underlying note" are also a sufficient, alternative way to prove standing to foreclose.  *Dyer Trust 2012-1*, 33 N.Y.S.3d at 416 (citations omitted).[6, 7]  Plaintiff has also demonstrated proof of default.  (*See*

---

[6] The Court also notes that any subsequent transfer of the interest does not affect Plaintiff's standing.  Although on June 29, 2017, Plaintiff physically delivered the promissory note, mortgage, and modification agreement to U.S. Bank National Association, solely as trustee for the RMAC Trust, Series 2016-CTT, (*see* Vargas Decl. Ex. G ("Montoya Aff.") ¶ 3 (Dkt. No. 39-7)), Plaintiff was in possession of the note *at the time the Action commenced* in 2016, (*see* Cert. of Merit Docs. 42).  It is a requirement under New York law that the plaintiff in foreclosure actions be "the lawful holder of the promissory note and of the mortgage" "*before* the commencement of the foreclosure action."  *Bank of N.Y. v. Silverberg*, 926 N.Y.S.2d 532, 539 (App. Div. 2011) (emphasis added) (citation and quotation marks omitted).  "If an interest is transferred, the action may be continued by or against the original party unless the court, *on motion*, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c) (emphasis added).  As no such motion has been presented here, this subsequent transfer does not alone deprive Plaintiff of standing; in fact, Plaintiff was the only entity that could have brought this Action in 2016.

[7] Defendant attaches a "Securitization Analysis Report" (the "Report") as Exhibit A to her Memorandum.  (*See* Def.'s Mem. Ex. A ("Def.'s Sec. Analysis Rpt.") (Dkt. No. 43).)  Although Plaintiff avers that nothing within the Report is admissible because it is "unsworn," (Pl.'s Reply Mem. 5), the Report does include an Affidavit from Andrew Lehman, a "Certified Mortgage Securitization Auditor" where he declares "under penalty of perjury" that certain facts are true.  (*See generally* Aff. of Andrew Lehman ("Lehman Aff.") (Dkt. No. 43).)  However, nothing within the Affidavit necessarily refutes the prima facie case or standing established by Plaintiff.  It states that a search on the Bloomberg terminal yielded the finding that Aurora Loan Services is the "Master Servicer" on "[a] trust meeting the qualifications for securitization" that likely contained Defendant's mortgage, based on similar characteristics to the original

Robertson Aff. ¶ 6; Montoya Aff. ¶ 5; *see also* Cert. of Merit Docs. 1.)  Therefore, Plaintiff has

established both that it has standing and is presumptively entitled to foreclose.

Most of Defendant's other counterarguments or affirmative defenses are similarly

unavailing.  Although Defendant asserted that she was not served properly because service did

not occur at the Property itself, (Answer 1),[8] Plaintiff did serve Defendant pursuant to a method

prescribed by the Federal Rules of Civil Procedure.  Plaintiff has submitted an Affidavit of

Service indicating that Defendant was personally served at her residence in Florida, (*see* Vargas

Decl. Ex. D ("Aff. of Service") (Dkt. No. 39-4)),[9] which creates a presumption of proper service,

*Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002) ("[A]

process server's affidavit of service establishes a prima facie case of the account of the method

of service . . . ." (citation omitted)).  Pursuant to the Federal Rules, delivering a copy of the

---

promissory note issued by Lehman Brothers Bank in 2005 to Defendant.  (*Id.* ¶¶ 5–8.)  The
Second Circuit has explained that mortgage lenders often "sell[] pools of mortgages into trusts
created to receive the stream of interest and principal payments from the mortgage borrowers."
*Blackrock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assurance Corp.*, 673 F.3d 169, 173
(2d Cir. 2012).  A "mortgage servicer" is sometimes hired by the trustee "to administer the
mortgages by enforcing the mortgage terms and administering the payments."  *Id.*  However,
"[t]he *right to receive trust income* [from the variety of mortgages within it] is parceled into
certificates and sold to investors . . . ."  *Id.* (emphasis added).
Therefore, even if Aurora Loan Services were the main servicer of the trust which
contained Defendant's mortgage, this does not rebut Plaintiff's evidence that the promissory note
underlying the mortgage, and therefore, all "right, title, and interest in" the revenue from it was
assigned to Plaintiff.  (*See* Cert. of Merit Docs. 42.)  Even if the mortgage itself was
"improperly" assigned to Plaintiff, (Def.'s 56.1 ¶ 3), under New York law, "the mortgage passes
as an incident to the note," and if the note is assigned, the status of the mortgage "does not stand
as a bar to a foreclosure action," *Aurora Loan Servs.*, 34 N.E.3d at 366 (citations and quotation
marks omitted).  Therefore, Plaintiff's standing to enforce this Action remains unrebutted by the
Report.

[8] The Court refers to the ECF-stamped page numbers when citing to Defendant's Answer.

[9] Although Plaintiff cites to Vargas Declaration Exhibit C for this document, (Pl.'s Mem.
7), it is actually Exhibit D.  For any subsequent submissions, Plaintiff is directed to include
accurate and detailed record cites.  The Court will not search the record for relevant supporting
documents in the future.

summons and complaint to the individual personally satisfies service requirements.  Fed. R. Civ.

P. 4(e)(2)(A).  Defendant has not provided any specific, sworn facts to contradict the service

documented by the Plaintiff's Affidavit of Service, *see Old Republic Ins.*, 301 F.3d at 57–58

(explaining that a "sworn denial" would "rebut[] the presumption of service established by [a]

process server's affidavit" (citation omitted)), and there is no specific requirement that Plaintiff

have provided service at the Property in question if Defendant was personally served at another

address.  Additionally, contrary to Defendant's assertion, (*see* Answer 1), venue is also proper

because the Property at question is located in Orange County, New York, which is within the

Southern District of New York, (*see* Compl. 1).  Therefore, it meets the requirement under 28

U.S.C. § 1391(b)(2) that a civil action be brought in a "judicial district in which . . . a substantial

part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2); *see also*

*United States v. Marin*, No. 18-CV-9307, 2020 WL 378094, at *10 (S.D.N.Y. Jan. 23, 2020)

(noting that venue is proper in the Southern District of New York where the majority of the

property subject to foreclosure was located in counties within the District).

Defendant also once again puts forth the argument that there is a separate pending action

in the Supreme Court of New York that would require the barring of this Action.  (Def.'s Mem.

4.)  The Court has already addressed and dismissed this argument in a previous Order, where it

noted that the state foreclosure action was disposed of on May 22, 2015, following settlement

conferences.  (*See* Order on Mot. for Renewal (Dkt. No. 29); *see also*

https://iapps.courts.state.ny.us/webcivil/FCASMain (last visited May 27, 2020) (Index Number

000473/2011, *Aurora Loan Services v. Esther Hunte*).)  Moreover, this Action is based on

Defendant's nonpayment since March 1, 2016, which postdates the state action and the

subsequent settlement that was reached.  (*See* Order on Mot. for Renewal 2.)

Lastly, Defendant renews her argument that Plaintiff has pursued this Action in bad faith, through fraudulent means, or with "unclean hands."  (*See* Def.'s Mem. 4–5; Def.'s 56.1 ¶ 7.) Given that Plaintiff has put forth documentation establishing a prima facie case of foreclosure, it cannot be said that Plaintiff has engaged in "immoral, unconscionable conduct."  *Jiles v. Archer*, 983 N.Y.S.2d 283, 285 (App. Div. 2014) (citations and quotation marks omitted) (describing the doctrine of unclean hands).  Accordingly, this affirmative defense does not protect Defendant, either.  To the extent Defendant seeks to articulate an affirmative defense of fraud, *see* Fed. R. Civ. P. 8(c)(1), Defendant fails to articulate precisely in which way Plaintiff defrauded Defendant, which is a requirement under the Federal Rules, *see* Fed R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").[10]

Defendant also appears to argue that Plaintiff failed to demonstrate its compliance with RPAPL § 1304, (*see* Def.'s Reply Mem. 4), which requires that, 90 days prior to initiating a foreclosure on a home loan, a lender, assignee, or mortgage loan service send a borrower a particular notice, *see* N.Y. Real Prop. Acts. Law § 1304(1).  However, Plaintiff has submitted evidence demonstrating that a notice in compliance with this law was mailed out on July 7, 2016 and recorded with the Superintendent of Financial Services on July 8, 2016, over 90 days before it commenced this action in November 2016.  (*See* Montoya Aff. ¶¶ 6–7; Robertson Aff. ¶¶ 7–8.) The submitted Affidavits and copies of the notices are legally sufficient to show that the mailing

---

[10] As discussed below, the Court does note and address the inconsistencies in the documentation of the loan modification agreement in the record.  However, this tension alone does not, at this point in the record, meet the burden of proving fraud as an affirmative defense to contract-based claims, which requires "clear and convincing evidence rather than only a fair preponderance of the credible evidence" that an agreement, even if "valid on its face," should be voided.  *Monarch Nut Co., LLC v. Goodnature Prods., Inc.*, No. 14-CV-1017, 2019 WL 441591, at *4 (W.D.N.Y. Feb. 5, 2019) (citation and quotation marks omitted).

occurred.  *See HSBC Bank USA, Nat'l Assoc. v. Oczan*, 64 N.Y.S.3d 38, 43–44 (App. Div. 2017)

(noting that an affidavit from an employee of the loan servicer who had "reviewed the books and

records contemporaneously created" and could confirm that the requisite mailing occurred

"demonstrate, prima facie, that [the loan servicer] complied with the mailing requirements of

RPAPL [§] 1304" (citations omitted)).[11]

However, Defendant does raise an issue that requires further explanation from Plaintiff.

Defendant points out certain discrepancies between the two copies of the loan modification

agreement on the record.  Although Plaintiff has attached a loan modification agreement signed

by both Defendant and the lender, the signature of the lender appears to be accompanied by a

notary stamp dated March 31, 2019.  (*See* Cert. of Merit Docs. 53–54.)  On the other hand,

Defendant has attached a copy of the loan modification agreement with different native

pagination on the signature pages and no signature from the lender at all.  (*See* Def.'s

Modification Agreement 61–62.)  Furthermore, the loan modification agreement specifically

provides that the loan documents "will not be modified unless and until (i) [the borrower]

receive[s] from the Lender a copy of this Agreement *signed by the Lender*, and (ii) the

Modification Effective Date (as defined in Section 3) has occurred."  (Def.'s Modification

Agreement 58; Cert. of Merit Docs. 45 (emphasis added).)  Plaintiff has not explained the

discrepancy in the pagination of the two copies of the contract, the significance of the notary

stamp dated March 31, 2019, or how a potentially belated lender's signature would or would not

---

[11] In any event, Defendant does not even assert that the Property is her principal dwelling, which is a requirement for the definition of "home loan" under the statute.  *See* N.Y. Real Prop. Acts. Law § 1304(6)(a)(1)(iii).  Defendant was served personally at her dwelling in Florida, and Defendant does not dispute this, although she does complain that she was not served at the Property at issue.  (*See* Aff. of Service; Answer.)  Therefore, although Plaintiff elected to mail Defendant a notice about the impending default, RPAPL § 1304 does not appear to be applicable to the circumstances anyway.

15

affect the enforceability of the contract.  *See Pandit v. Saxon Mortg. Servs., Inc.*, No. 11-CV-3935, 2012 WL 4174888, at *5 (E.D.N.Y. Sept. 17, 2012) (collecting cases and noting that similar language has been critical in determining the enforceability of modification contracts).  As the validity of the modification affects the final calculation of how much Defendant owes Plaintiff, and which contractual terms apply, the competing copies of the contract raise a genuine dispute of material fact, and the Court cannot at this time grant Plaintiff the entirety of the relief it seeks.  (*See* Proposed Order.)  Accordingly, the Court declines to grant summary judgment as to the specified amount and on the exact terms demanded by Plaintiff.

Instead, the Court provides Plaintiff with an opportunity to provide supplemental briefing on the issue of the modification agreement.  There, Plaintiff should address the issues discussed above, provide all information necessary to corroborate the validity of the document, and articulate the resulting impact on the damages calculation.  Plaintiff should also address what damages it would be owed in the event the Court is unable to verify the validity of the modification agreement.  Any subsequent submissions are due 30 days from the date of this Opinion & Order.  Defendant will have 30 days from Plaintiff's submissions to respond.   There will be no extensions.  Plaintiff's failure to properly and timely address the Court's concerns may result in dismissal of this Action.

### III.  Conclusion

For the foregoing reasons, the Court partially grants and partially denies Plaintiff's Motion for Summary Judgment.

16

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. Nos. 35–36), and mail a copy of this Opinion & Order to Defendant.[12]

SO ORDERED.

DATED:        June 1, 2020
              White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[12] Plaintiff submitted two Notices of Motion, but they appear to be identical.  In any event, only one Motion was briefed, and both "Notices" should be terminated.