UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATIONSTAR MORTGAGE LLC,

                               Plaintiff,

                    v.

ESTHER HUNTE,

                               Defendant.

---

No. 16-CV-8708 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

Nationstar Mortgage LLC ("Plaintiff") brings this Action seeking to foreclose on a mortgage encumbering 42 Brooker Drive, Newburgh, NY 12550, together with the land, buildings, and other improvements on it (the "Property").  (*See* Compl. (Dkt. No. 1).)  The Court in an Opinion & Order on June 1, 2020 ("June Opinion") partially granted Plaintiff's Second Motion for Summary Judgment ("Plaintiff's Motion"), (Dkt. Nos. 35–36), against pro se Defendant Esther Hunte ("Defendant"), but noted uncertainty regarding the validity of the loan modification agreement, which may affect the damages available to Plaintiff, (Op. & Order ("June Op.") (Dkt. No. 47)).  Before the Court are a series of Plaintiff submissions related to that uncertainty, (Dkt. Nos. 48, 50, 51), as well as Defendant's Motion to Dismiss ("Defendant's Motion") (Not. of Mot. (Dkt. No. 54).)  The Court assumes the Parties' familiarity with the facts and law as discussed in the June Opinion, which it will not rehash here except to the extent necessary to explain its reasoning.  For the reasons explained below, the Court denies Defendant's Motion and declines to enter judgment on Plaintiff's Motion.

Insofar as it seeks dismissal of the Complaint, Defendant's Motion is denied.  The Court considered and rejected Defendant's Motion's arguments in the June Opinion.  (*See generally*

Def.'s Opp. To Pl.'s Suppl. Mem. ("Def.'s Mem.") (Dkt. No. 55); Aff. in Supp. of Mot. ("Def's.

Aff.") (Dkt. No. 60).)  This includes the arguments that (1) there is a "separate pending action in

the Supreme Court in the State of New York," (Def.'s Mem. 2–3; *see also* June Op. 13), (2)

Plaintiff lacks standing due to a deficient chain of assignments (Def.'s Mem. 6–7; June Op. 10–

11), (3) Plaintiff acted in bad faith and with unclean hands (Def.'s Mem. 4, 8, 11; June Op. 14),

and (4) Plaintiff has failed to prove a default (Def.'s Aff. 1–2; June Op. 11–12).[1]  The Court's

conclusions are unchanged.[2]

---

[1] In referring to Defendant's Memorandum and Affidavit, (Def's. Mem., Def's. Aff.), the Court refers to the ECF system-generated page numbers in the top right-hand corner of the page.

[2] Defendant newly points out that appeals related to the prior state court action are pending before the Second Department of the New York Supreme Court, Appellate Division. (Def.'s Mem. 2–3.)  As discussed in the June Opinion, this state court case was settled on May 22, 2015 due to a loan modification. (June Op. 13.)  It appears that one of the parties filed a motion to renew/reargue/resettle/reconsider on May 30, 2018, which was denied on June 5, 2018.  *See Aurora Loan Services LLC v. Esther Hunte, et al.*, No. 000473/2011, available at https://iapps.courts.state.ny.us/webcivil/FCASMain (last visited Sept. 16, 2020) (Index No. 000473/2011).  The Court reiterates that the instant Action is based on Defendant's nonpayment since March 1, 2016, which post-dates the settlement in the state court action.  (*See* June Op. 13.) Abstention here is inappropriate under the *Rooker-Feldman* doctrine, because "the losing party in state court [has not] filed suit in federal court after the state proceedings ended complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291 (2005).

Abstention is also inappropriate under the *Colorado River* doctrine.  "[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*."  *Dittmer v. County of Suffolk*, 146 F. 3d 113, 118 (2d Cir. 1998) (citations omitted). "[A]ctions are parallel where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case."  *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-CV-4871, 2020 WL 1151313, at *8 (S.D.N.Y. Mar. 9, 2020) (citation, emphasis, and quotation marks omitted).  "Any doubt regarding the parallel nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction."  *Id.* (citation omitted).  Here, there is doubt that the cases are parallel, because the state court action is based on the original mortgage and note, while the instant Action is based in part on Plaintiff's rights under the modification agreement.

Defendant also newly requests that the Robertson Affidavit, (Pl.'s Decl. in Supp. of Mot. Ex. F ("Robertson Aff.") (Dkt. No. 39-6)), be stricken from the record because it contains boilerplate about Nationstar's business processes and "is not based on personal knowledge of the affiant," (Def.'s Mem. 4–6).  Records of regularly conducted activity such as mortgage payments

The June Opinion requested that Plaintiff submit "all information necessary to corroborate the validity of the [modification agreement]." (June Op. 16.)  In response, Plaintiff submitted a Declaration, (Pl.'s Suppl. Decl. ("Pl.'s Decl.") (Dkt. No. 48)), and, at the Court's prompting, (Dkt. No. 49), an Affidavit, (Pl.'s Aff. (Dkt. No. 51)).

The June Opinion noted ambiguity surrounding the date of Plaintiff's signature of the modification agreement.  (June Op. 15–16.)  In response, the Declaration describes Plaintiff's signature of the modification agreement on June 5, 2015, before Notary Public Justin Gfeller whose commission expired on March 31, 2019.  (Pl.'s Decl. 1–2.)  In light of this explanation, the Court finds that there is no dispute of fact regarding Plaintiff's signature of the modification agreement.[3]

The June Opinion also noted ambiguity surrounding whether Defendant had received a copy of the modification agreement signed by Plaintiff.  (June Op. 4, 15.)  This is relevant

---

are admissible "where the record was made contemporaneously by someone with knowledge, the record was kept in the regular course of business and as a regular practice, a qualified witness testifies to those facts, and the records are trustworthy."  *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 691 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016); *see also* Fed. R. Evid. 803(6).  An affidavit is sufficient to qualify a business record.  *Donziger*, 974 F. Supp. 2d at 691.  Here, Robertson, who is qualified because she works for Plaintiff as a document execution specialist, attests that the records are "made at or near the time [of payment] by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the course of business activity conducted regularly."  (Robertson Aff. ¶¶ 1–2.)  This is sufficient to qualify the submitted system notes as business records.  *See Fed. Nat'l Mortg. Ass'n v. Obradovich*, No. 14-CV-4664, 2020 WL 2767578, at *4 (N.D. Ill. May 28, 2020) (allowing business records over a similar objection that they are "boilerplate").

[3] It is irrelevant that Mr. Gfeller's commission was not yet valid at the time Defendant signed the modification agreement, (Def.'s Mem. 10), because his commission was valid when he notarized Plaintiff's signature, (Pl.'s Decl. in Supp. of Mot. Ex. B ("Cert. of Merit Docs.") 52 (Dkt. No. 39-2)), and a different Notary Public notarized Defendant's signature (*id.* 50; Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J. Ex. B ("Def.'s Mod. Agreement") 60 (Dkt. No. 43)).

because it could affect the validity of the modification agreement, which may affect the calculation of damages.  (June Op. 15–16.)

Plaintiff can establish a presumption of receipt of mail "[w]hen the record shows that there was an ordinary office procedure for mailing." *Zambrana v. Pressler & Pressler, LLP*, No. 16-CV-2907, 2016 WL 7046820, at *4 (S.D.N.Y. Dec. 2, 2016) (citing *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 597 F.3d 84, 92 (2d Cir. 2010)); *see also Marcario v. Midland Credit Mgmt., Inc.*, No. 17-CV-414, 2017 WL 4792238, at *4 (E.D.N.Y. Oct. 23, 2017) ("Courts in this circuit have found that there is a presumption of receipt when evidence is provided that described an office's standard mailing procedures." (citation omitted)); *Greco v. Bank of Am., N.A.*, No. 16-CV-2196, 2017 WL 1483524, at *5 (E.D.N.Y. Apr. 25, 2017) (collecting cases) (holding that a presumption of proper mailing may be established by offering "standard mailing practice").  This presumption, in turn, may be rebutted by "a showing that the routine office practice was not followed or was so careless that it would be unreasonable to assume that the notice was mailed." *CIT Bank N.A. v. Schiffman*, 948 F.3d 529, 533 (2d Cir. 2020) (citation, alteration, and quotation marks omitted); *see also Oskar v. IDS Prop. Cas. Ins. Co.*, No. 09-CV-4516, 2011 WL 1103905, at *4 (E.D.N.Y. Mar. 23, 2011) ("[N]aked denial of receipt, without more, is inadequate to rebut the presumption once established.").  While courts have taken a flexible approach to assessing the sufficiency of a showing of a standard mailing practice, they have required that the moving party provide information about its mailing procedure.  *See, e.g.*, *Schiffman*, 948 F.3d at 534 (holding that an affidavit describing the creating, addressing, and filling of envelops establishes the presumption of receipt, and that a party need not "describe the exact process by which notices are provided to the United States Post Office for mailing" (citation and quotation marks omitted)); *HSBC Bank USA, Nat. Ass'n. v. Ozcan*, 64 N.Y.S.3d 38,

4

43 (N.Y. App. Div. 2017) (finding a presumption of receipt based on an affidavit describing a regular practice of mailing two copies of a notice of default, one by certified mail and one by regular mail, each with different barcodes).  Plaintiff may also establish mailing by offering an affidavit of an individual with "first-hand knowledge of whether the [modification] [a]greement was sent to [Defendant]."  *Zambrana*, 2016 WL 7046820, at *4; *see also CIT Bank, N.A. v. Valerio*, No. 16-CV-6644, 2019 WL 7862489, at *6 (E.D.N.Y. Oct. 29, 2019) (noting that "an affidavit of service of the actual mailing" may trigger the presumption of mailing (citation and quotation marks omitted)), *report and recommendation adopted*, 2020 WL 90831 (E.D.N.Y. Jan. 8, 2020).

Here, Plaintiff's Affidavit attests to familiarity with and describes the process of creating, integrating, and quality control checking Plaintiff's business records.  (Pl.'s Aff. 1–2.)[4]  It further attests that these business records show that Plaintiff mailed the executed modification agreement to Defendant at 42 Brooker Dr., Newburgh, NY 12550 on June 12, 2015.  (*Id*. at 2.)[5] Plaintiff's Affidavit also attaches the relevant business record.  (*Id*. at 21.)  Notably, Plaintiff's affidavit neither provides any detail about its standard mailing process, nor attests to the affiant's personal involvement in mailing the modification agreement.  (Pl.'s Aff. 1–2.)  As a result,

_____

[4] In referring to Plaintiff's Affidavit, (Pl.'s Aff.), the Court refers to the ECF system-generated page numbers in the top right-hand corner of the page.

[5] This matches Defendant's address as listed on the docket and in certain of her submissions.  (*See, e.g.*, Not. of Mot.)  *See Kailey v. Bastidos*, No. 11-CV-145, 2012 WL 3277127, at *1 (D. Colo. Aug. 9, 2012) ("[D]ocket entries enjoy a presumption of accuracy." (citation omitted)).

"[Plaintiff] ha[s] no evidence that the [modification] [a]greement was sent to [Defendant] or that she otherwise received the [modification] [a]greement." *Zambrana*, 2016 WL 7046820, at *4.[6]

Plaintiff argues that, even if the modification agreement is invalid because the executed version was not received by Defendant, Defendant ratified the agreement by making ten payments consistent with its terms.  (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. ("Pl.'s Mem.") 4–6 (Dkt. No. 59).)  Defendant responds that these were trial payments, not payments under the final, executed modification agreement.  (Def.'s Mem. 4.)[7]  The Court does not decide whether Plaintiff's payments were trial payments, because in the absence of effective delivery the modification agreement was void and could not be ratified.  The modification agreement states that "[t]he [l]oan [d]ocuments will not be modified unless and until . . . [Defendant] receive[s] from [Plaintiff] a copy of this [a]greement signed by [Plaintiff] . . . ."  (Cert. of Merit Docs. 45; Def.'s Mod. Agreement 58.)  In the absence of a contrary submission by Plaintiff, the Court interprets this provision, consistent with its plain meaning, as a condition precedent to the

---

[6] Indeed, while the record is unclear, it suggests that Defendant did not receive the modification agreement.  Defendant has submitted a sworn affidavit stating the following:
- "[A]ny reasonable person can conclude that a properly modified document was not issued to the Defendant and as a result the Modification Agreement did not go into effect." (Def.'s Mem. 2.)
- "[T]his case clearly proves the loan was not properly modified and . . . Plaintiff did not deliver the terms of the settlement as agreed . . . ." (*Id.*)
- "[T]his case proves beyond a reasonable doubt that the Modification was not executed . . . ." (*Id*. at 4.)

[7] Defendant further alleges that Plaintiff engaged in dual tracking.  (Def.'s Mem. 8–9.) Federal regulations prohibit loan servicers like Plaintiff from filing or moving for a judgment of foreclosure prior to resolving the borrower's complete loss mitigation application.  *See* 12 C.F.R. § 1024.41(f)–(g).  While the record is unclear on whether Plaintiff violated this regulation, the Court notes that "a dual tracking claim brought pursuant to [12 C.F.R. § 1024.41(f)–(g)] is not a defense to foreclosure."  *Almazon v. JPMorgan Chase Bank, N.A.*, No. 19-CV-4871, 2020 WL 1151313, at *15 (S.D.N.Y. Mar. 9, 2020) (collecting cases).

existence of a contract.[8]  A contract that does not come into force due to the failure of a condition precedent is void, not voidable.  *See Adams v. Suozzi*, 433 F.3d 220, 227 (2d Cir. 2005).  "Furthermore, a contract which is [v]oidable may be ratified while a [v]oid transaction cannot be."  *Bankers Tr. Co. v. Litton Sys., Inc.*, 599 F.2d 488, 492 (2d Cir. 1979) (citation and quotation marks omitted).  The cases cited by Plaintiff refer to instances where the contract was voidable—that is, subject to a valid defense.  *See, e.g.*, *Edison Stone Corp. v. 42nd St. Dev. Corp.*, 538 N.Y.S.2d 249, 251 (N.Y. App. Div. 1989) (rejecting the defense of duress where a defendant made 19 payments under an otherwise-valid contract); *M&T Mortg. Corp. v. St. Stephens Baptist Church, Inc.*, No. 03-CV-5657, 2005 WL 2413623, at *5 (E.D.N.Y. Sept. 27, 2005) (rejecting the defense of fraud where a defendant ratified an otherwise-valid contract).  Here, since the modification agreement was void, Defendant's payments could not ratify it.

Plaintiff argues that Defendant waited too long to question the validity of the mortgage modification.  (Pl.'s Mem. 6–7.)  In response, Defendant points to her Answer, which states that "[s]ervicer has promised a modification of the terms and has been negligent in properly modifying the loan."  (Def.'s Aff. 3; Answer 1 (Dkt. No. 10).)  Defendant also states that "[i]t is only now after the issue has been presented with specificity that . . . Plaintiff has recognized that the issue needed to be seriously addressed."  (Def.'s Aff. 3.)  Particularly in light of her pro se status, the Court will not bar Defendant from pointing out the deficiencies in Plaintiff's summary judgment submission.  *Cf. Massie v. Metro. Museum of Art*, 651 F. Supp. 2d 88, 93 (S.D.N.Y. 2009) ("[T]he Second Circuit . . . is solicitous of pro se litigants, enforcing standards of procedural leniency rather than holding them to the rigidities of federal practice.").

---

[8] The Court invited Plaintiff to submit briefing or information regarding "the significance of this term" in the modification agreement, but Plaintiff has declined this invitation.  (Memo Endorsement ("June Memo") 2 (Dkt. No. 49).)

As discussed in the June Opinion, Plaintiff is entitled to a judgment of foreclosure.  For the reasons discussed herein, it remains unclear whether this judgment should be entered on the original mortgage and note, or on the modification agreement.  It is also unclear whether and how this determination will affect the amount of damages to which Plaintiff is entitled.[9]  Given this continued ambiguity, the Court declines to enter judgment at this time.  Plaintiff may make further submissions in support of its Motion for Summary Judgment, (Dkt. Nos. 35–36), including related to (1) Defendant's receipt of the modification agreement; and (2) damages to which Plaintiff would be entitled under the original mortgage and note.

SO ORDERED.

DATED:          September 22, 2020
                White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[9] The June Opinion requested that Plaintiff submit supplemental briefing addressing "what damages it would be owed in the event the Court is unable to verify the validity of the modification agreement." (June Op. 16.)  The Court on June 24, 2020 reiterated its request for "further information on what impact [the Court's inability to verify the validity of the modification agreement] would have on the damages calculation." (June Memo 2.)  While it has asserted that a calculation of damages under the original mortgage and note would be "adverse to . . . Defendant," (Pl.'s Mem. 7), Plaintiff has not provided any specific alternative calculation in response to these requests.